IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81396-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARYL ROGERS, a/k/a | ) | UNPUBLISHED OPINION |
| DARYL CRAIG ROGERS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Daryl Rogers contends multiple errors prevented him from enjoying a fair trial. Because the record does not support his contentions, we affirm Rogers' conviction.

The court did not abuse its discretion by denying Rogers' motion for mistrial because the improper testimony mentioning his past juvenile detention was fleeting and immediately dismissed as "irrelevant" by the court's instruction to the jury.

The court did not abuse its discretion by admitting expert opinion testimony because both experts opined within their areas of expertise on relevant matters without invading the jury's role in determining credibility.

The court did not abuse its discretion by declining to strike a juror sua sponte because the whole of the circumstances did not show he had an actual bias that would prejudice Rogers.

The prosecutor properly stated the State's burden of proof and merely made arguments based on the evidence presented at trial.

However, a limited remand is necessary to strike a condition of community custody.

Therefore, we affirm Rogers' conviction and remand for proceedings consistent with this opinion.

## FACTS

When J.O. was a young girl, her family became close with Daryl Rogers and his family and even had Thanksgiving together one year. J.O.'s mother and stepfather hired him to babysit several times when they went out. J.O.'s mother remained in contact with Rogers even after fleeing to Alaska with her children to escape her abusive husband. After her husband learned her whereabouts and began sending people to her door, J.O.'s mother and her children returned to Washington and moved into Rogers' house. They lived in his house for two or three months before moving out due to a dispute about rent.

Years later, when J.O was 16, she revealed that Rogers had raped and molested her. J.O. resisted going to the police, but, two weeks later, her mother convinced her. The State charged Rogers with three counts of first degree rape of a child and three counts of first degree child molestation. During trial, J.O.

2

testified, as did two medical providers who had treated her, a mental health counselor and a pediatrician. The providers testified about their observations and provided general background information within their fields of expertise. Rogers testified in his own defense and called several additional witnesses. The jury convicted him on three counts of first degree rape of a child, first degree child molestation, and was unable to reach a verdict on the remaining charges.

Rogers appeals.

ANALYSIS

I. Motion for Mistrial

Rogers argues the court abused its discretion when it denied his motion for a mistrial after a witness testified he had been in juvenile detention. We review a court's decision to deny a motion for mistrial for an abuse of discretion.[1]

A serious trial irregularity, such as a witness's violation of a pretrial ruling excluding evidence, can prejudice a defendant.[2] When a defendant moves for a mistrial due to a serious irregularity, the court must determine its prejudicial effect by examining "'(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it.'"[3] A

---

[1] State v. Gamble, 168 Wn.2d 161, 177, 225 P.3d 973 (2010).

[2] Id.

[3] Id. (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

3

mistrial is appropriate when the irregularity, weighed against the entire record, prevented the defendant from having a fair trial.[4]

Here, the court granted an unopposed defense motion to exclude "any prior convictions by the defendant."[5] When J.O.'s mother testified, the prosecutor asked how her family first met and got to know Rogers. She responded:

> His stepfather was the maintenance man at the Fisher Mill Apartments, and he knew that we were new here, so we became friends with him. And then his mother used to come to the apartments in the community room, so we met her as well. They invited us to church. He was in juvenile detention at the time of us meeting his mom and his sister and brother. Then when he got out of juvenile detention --[6]

Defense counsel objected, and the court stopped her testimony. Outside the jury's presence, the parties argued whether mistrial was appropriate. When the jury returned, the court instructed it to disregard the testimony:

> Before we proceed, I'm going to give you an instruction regarding a remark the witness made and that wasn't in response to a question. It was some reference made by the witness to the possibility [the] defendant may have been in juvenile detention at some point. That was inappropriate. That has nothing to do with this case. It's irrelevant to this case. I'm instructing you at this time to disregard that remark and not to consider it or discuss it during your deliberations.[7]

The evidence was not raised again.

---

[4] Id. (quoting State v. Thompson, 90 Wn. App. 41, 47, 950 P.2d 977 (1998)).

[5] Report of Proceedings (RP) (Oct. 29, 2018) at 53.

[6] RP (Oct. 30, 2018) at 317-18.

[7] Id. at 321-22.

Rogers agrees the evidence was not cumulative and that the court gave an instruction to disregard. He argues the court's instruction "only served to emphasize Rogers' juvenile criminal history" and "was insufficient to ensure a fair trial because it emphasized the inadmissible and prejudicial evidence . . . by repeating it."[8] But Rogers fails to explain how the jury was to identify and disregard the "inappropriate" and "irrelevant" evidence without the court referring to it. The majority of the witness's response was appropriate and relevant, so the court's reference to "juvenile detention" was necessary to provide a clear instruction.

Within the context of the multiday trial, the witness's fleeting comment did not prevent Rogers from having a fair trial. The court gave an unequivocal and immediate instruction to disregard the improper testimony and lessened its seriousness by explaining Rogers' juvenile detention was irrelevant to the current charges. The improper testimony was not raised again. Rogers fails to show the court abused its discretion by denying his request for a mistrial.

II. Improper Opinion Evidence

Rogers contends improper expert opinion testimony bolstered J.O.'s credibility by making her seem like she fit the profile of a victim of sexual abuse. We review a court's decision to admit opinion evidence for abuse of discretion.[9] Generally, opinion "testimony that is not a direct comment on the defendant's guilt

---

[8] Appellant's Br. at 8-9.

[9] City of Seattle v. Levesque, 12 Wn. App. 2d 687, 698, 460 P.3d 205 (2020).

or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony."[10]  An expert may testify even more broadly and discuss "scientific, technical, or other specialized knowledge" if it will "assist the trier of fact to understand the evidence or to determine a fact in issue."[11]  Testimony suggesting that "'a victim exhibits behavior typical of a group'" does not improperly comment on credibility because it does not directly allow an inference of guilt.[12]

In State v. Kirkman, the defendant argued a doctor's testimony bolstered the victim's credibility.[13]  The defendant was charged with raping a six-year-old girl, and a doctor testified about the results of his physical exam on the victim.[14]  The victim's vaginal exam showed no signs of sexual contact, and in response to the State's questions, the doctor opined "to have no findings after receiving a history like that is actually the norm rather than the exception."[15]  The doctor also

---

[10] City of Seattle v. Heatley, 70 Wn. App. 573, 578, 854 P.2d 658 (1993).

[11] ER 702.

[12] State v. Florczak, 76 Wn. App. 55, 73, 882 P.2d 199 (1994) (quoting State v. Jones, 71 Wn. App. 798, 815, 815 n.6, 863 P.2d 85 (1993)); see State v. Case, No. 52464-3-II, slip op. at 18 (Wash. Ct. App. June 23, 2020), https://www.courts.wa.gov/opinions/pdf/D2%2052464-3-II%20Published%20 Opinion.pdf. ("Expert witnesses may testify on general characteristics or conduct typically exhibited by survivors of domestic violence.")

[13] 159 Wn.2d 918, 155 P.3d 125 (2007).

[14] Id. at 924.

[15] Id.

testified the young victim "had good language skills for her age [and] spoke clearly" before relaying the victim's disclosure's about the defendant raping her.[16]

The court concluded none of the testimony was improper.[17] The doctor's opinion about the physical examination was relevant because the defendant attacked the victim's credibility, and it explained the discrepancy between the rape allegations and normal physical exam.[18] His opinion about the victim's clear communication was "content neutral" because it discussed his observations of the victim's manner and did not comment on "the substance of the matters discussed."[19] The testimony "did not come close to testifying on any ultimate fact" because the doctor "never opined that [the defendant] was guilty," that the victim was raped, or that he believed the victim.[20]

In the 1988 case of State v. Ciskie, a boyfriend was on trial for repeatedly raping his girlfriend over 10 months as part of a pattern of physical and emotional abuse.[21] The State called an expert to testify about the then-novel idea of battered person syndrome, patterns of domestic abuse, and why abused partners may stay with their abusers.[22] The trial court limited the expert's testimony to battered

---

[16] Id. at 924-25.

[17] Id. at 934.

[18] Id. at 933.

[19] Id.

[20] Id.

[21] 110 Wn.2d 263, 266-68, 751 P.2d 1165 (1988).

[22] Id. at 273-74.

person syndrome, the girlfriend's diagnosis of posttraumatic stress disorder and related background information, and it prohibited testimony opining about whether she had been raped.[23]  Although this ruling could have let the jury infer that the girlfriend had been raped, the court concluded these decisions were not an abuse of discretion because they aided the jury's understanding without "invading its role as judge of credibility."[24]

Rogers argues testimony from licensed mental health counselor Maureen Garrett "vouched for J.O.'s credibility and, indirectly, Rogers' guilt."[25]  Garrett treated J.O. from late 2016 through early 2017.  Garrett testified about J.O.'s diagnosis of posttraumatic stress disorder and related symptoms and then answered a series of questions from the State about self-harm and sexual abuse.  Garrett explained, "There's a correlation between trauma and sexual abuse, specifically in self-harming behaviors" and that self-harming behaviors can be a coping mechanism for sexual trauma.[26]  She also noted self-harm is not exclusive to sexual assault victims.  Earlier that day, J.O. had testified she engaged in self-harm, such as burning and cutting herself, after Rogers assaulted her.

Like the doctor in Kirkman, Garrett did not comment about J.O.'s history of self-harm or whether she found J.O. credible.  And like the expert in Ciskie, her testimony opined generally on the correlation between self-harm and a history of

---

[23] Id. at 280.

[24] Id.

[25] Appellant's Br. at 12.

[26] RP (Oct. 30, 2018) at 409-10.

trauma, providing background on an unfamiliar subject to help the jury's understanding. Rogers analogizes this case to State v. Jones, in which a social worker testified she "believed" the victim's allegations and that the victim "had been sexually molested by [the defendant] at some point."[27] Jones is inapposite because Garrett did not comment directly on J.O.'s credibility or Rogers' guilt. Because Garrett's testimony did not directly opine about J.O.'s credibility, it assisted the jury, and it was based upon her personal observations and expertise, Rogers fails to show the court abused its discretion.[28]

Rogers also challenges testimony from Dr. Kimberly Copeland for bolstering J.O.'s credibility.[29] Copeland performed a physical examination on J.O. after she revealed Rogers' assaults. Copeland testified the vaginal examination was "normal."[30] The State asked, "Was that surprising to you?," and Copeland explained:

> I expect a large majority of these exams to be normal, regardless of the type of abuse that has happened. And that's based on numerous studies that have been done following kids that have been abused or not abused and looking at their exams. And it's only about five percent that have had penetrative abusive events that will have any abnormal findings.[31]

---

[27] 71 Wn. App. 798, 803-04, 863 P.2d 85 (1993).

[28] Heatley, 70 Wn. App. at 578; ER 702.

[29] The State contends Rogers failed to preserve this issue for appeal. Because we have the discretion to consider an issue not properly objected to during trial, RAP 2.5(a), and it does not change the outcome, we will consider the merits of Rogers' argument.

[30] RP (Oct. 30, 2018) at 444.

[31] Id.

9

This testimony is based upon Copeland's expertise as a pediatrician and helps the jury understand her lack of surprise at J.O.'s normal physical examination, especially when the body's reaction to sexual trauma is not common knowledge. As in Kirkman and Ciskie, Copeland's testimony was relevant to the jury's understanding and did not opine directly about any issues for the jury. Rogers does not show the court abused its discretion.

III. Juror Bias

Rogers argues he did not receive a fair trial due to juror bias. He contends the court failed to dismiss juror 16 sua sponte after the juror expressed actual bias. A court has broad discretion to consider all of the circumstances when deciding whether to dismiss a juror.[32] We review a court's decision to seat or dismiss a juror for abuse of discretion.[33]

The trial court has an independent statutory duty to dismiss a juror who has shown actual bias.[34] A juror manifests actual bias when he "cannot try the issue impartially."[35] Thus, merely equivocal answers do not require dismissal,[36] and an expression of bias may be neutralized by further questioning.[37]

---

[32] State v. Phillips, 6 Wn. App. 2d 651, 662, 431 P.3d 1056 (2018), review denied, 193 Wn.2d 1007, 438 P.3d 116 (2019).

[33] State v. Lawler, 194 Wn. App. 275, 282, 374 P.3d 278 (2016).

[34] Phillips, 6 Wn. App. 2d at 666.

[35] RCW 4.44.170(2).

[36] Lawler, 194 Wn. App. at 283; see RCW 4.44.190 (dismissal of a juror is not required if he can disregard his biased opinion).

[37] See State v. Irby, 187 Wn. App. 183, 195-96, 347 P.3d 1103 (2015) (additional individual questioning may show equivocation and neutralize bias).

In State v. Gonzales, this court required retrial after concluding the trial court failed to dismissed a biased juror.[38] During voir dire, the State asked about the credibility of police officers, and the juror opined she could not disbelieve a police officer's testimony.[39] The juror also said, "I don't know if I could" maintain a presumption of innocence for the defendant if a police officer testified to his guilt.[40] Because the juror admitted a bias towards police officers, that her bias would harm her ability to deliberate, that her bias would undermine the presumption of innocence, and neither the court nor any party attempted to rehabilitate the juror, the court abused its discretion by seating her.[41]

Rogers contends juror 16 expressed actual bias during defense counsel's portion of voir dire. Defense counsel posed a hypothetical and asked whether any juror's ability to render a verdict would change if the defendant declined to present a case. He and juror 16 had the following exchange:

> JUROR 16: Well, without strong exculpatory evidence on the defense part, the State has the scales tipped in their favor. There is just no way I could look at everything they present without a defense and judge otherwise.
>
> COUNSEL: Okay. Well, I appreciate the candor. I suspect that might be a preconceived notion that a lot of people come in with. I would like to remove the idea for a second that I—that we wouldn't present any kind of a case, and as I proposed to [juror] No. 15 here, look at all the evidence as a whole, but imagine a hypothetical where you had questions after that.

---

[38] 111 Wn. App. 276, 277, 45 P.3d 205 (2002).

[39] Id. at 278.

[40] Id. at 279.

[41] Id. at 281-82.

JUROR 16: Sure, I would submit my questions to the judge.

COUNSEL: Okay.

JUROR 16: But, again, it's heavily weighted toward the State.[42]

In other portions of voir dire, juror 16 was asked whether he could follow a court's instructions regarding the law, even if he thought the law was different. He explained, "If the crime meets the definition of what is set on paper is written as a law, that's what needs to be followed, not what you think it means."[43] Juror 16 also expressed a bias against elected judges because they "always seem to want to throw the book at a defendant to appear tough on crime," but he "would do the best I could" to set those feelings aside.[44] Juror 16 also said his mother had been sexually assaulted, but when asked by defense counsel if that "would make it very difficult or possible for you to be impartial," he responded, "No. No, not on that."[45]

Unlike the juror in Gonzales, he did not express an inability to remain impartial due to a bias against the defendant or towards the police. Juror 16 admitted a presentation of evidence by the State could sway him in absence of a presentation by the defendant—a mere hypothetical when the court knew Rogers would be presenting a defense. Although juror 16 reiterated his bias after defense counsel clarified Rogers would mount a defense, it may have been clear to the court that juror 16 did not catch the clarification. The court also knew defense

---

[42] RP (Oct. 29, 2018) at 134-35.

[43] Id. at 144.

[44] Id. at 103.

[45] Id. at 113.

counsel declined to strike juror 16 and, given all of juror 16's responses, may not have wanted to undermine a legitimate tactical decision not to challenge him.[46] Considered within the full context of voir dire and the trial, the court did not abuse its discretion by seating juror 16.

IV. Statement of Additional Grounds

Rogers filed a statement of additional grounds, arguing prosecutorial misconduct deprived him of a fair trial.

To show prosecutorial misconduct, a defendant must establish "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'"[47] A prosecutor's conduct was prejudicial when the defendant can show "'a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'"[48] But when, as here, a defendant fails to object to improper conduct at trial, the error is waived unless the conduct "'is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'"[49]

---

[46] See Lawler, 194 Wn. App. at 284-85 (explaining a court must balance its duty to strike a juror showing actual bias with a defendant's right to control his defense); CP at 144 (jury panel sheet showing defense counsel declined to use all of his challenges).

[47] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

[48] Id. at 442-43 (alteration in original) (quoting Magers, 164 Wn. 2d at 191).

[49] Id. at 443 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

First, Rogers appears to argue the prosecutor asked improper impeachment questions of defense witness Demetrius Rogers, the defendant's brother. Soon after cross-examination began, the prosecutor and Demetrius[50] had the following exchange:

Q: Right before you came in here, your sister came out to talk to you, right?

A: We did not have a conversation.

Q: You guys didn't just talk about all that briefly before coming in?

A: I handed her my phone and my cover and that was all.

Q: You've spoken with your brother Daryl about this case before today, right?

A: I have.

Q: And you've talked about the fact that you were going to be called to testify, right?

A: He let me know, yes.

Q: And you've talked about the allegations, right?

A: I was aware, yes.

. . . .

Q: You love your brother very much, right?

A: I do.[51]

The prosecutor's questions impeached Demetrius's credibility by suggesting a bias towards his family, an entirely appropriate purpose of cross-

---

[50] We refer to Demetrius by his first name for clarity.

[51] RP (Oct. 31, 2018) at 550-51, 553.

examination.[52]  Contrary to Rogers' belief that the prosecutor inserted himself into trial by asking whether Demetrius spoke with his sister, Demetrius's answer laid the foundation by establishing they had interacted.[53]  The prosecutor's reliance on his knowledge of their interaction was no different from any attorney's reliance on an out-of-court interview to lay foundation.

Second, Rogers argues the prosecutor misstated the burden of proof in his closing argument.  We review allegedly improper remarks in closing argument within their entire context, including the issues in the case and the instructions to the jury.[54]  Rogers contends the prosecutor misstated the burden of proof by arguing "[b]eyond a reasonable doubt does not mean beyond all doubt.  It is not 100 percent."[55]  But the prosecutor also quoted the unchallenged jury instruction providing the State's burden of proof.  And he also explained proof beyond a reasonable doubt required "an abiding belief in the truth of the charges"[56] and urged the jury to convict only if the evidence "left [them] with an abiding belief that

---

[52] See State v. Lubers, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996) ("Evidence of bias and interest is relevant to a witness's credibility.").

[53] Rogers' reliance on a federal case, United States v. Rangel-Guzman, 752 F.3d 1222, 1224 (9th Cir. 2014), is misplaced.  In that case, the prosecutor relied on her own knowledge of the defendant's prior statements from outside of court to impeach him without first establishing a foundation, which inserted her into the proceedings by introducing new evidence only through her questions.  Id. at 1225.

[54] State v. Anderson, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009).

[55] Statement of Additional Grounds at 4 (quoting RP (Nov. 1, 2018) at 683-84).

[56] RP (Nov. 1, 2018) at 683.

[Rogers] did these things to [J.O.]."[57]  The prosecutor did not misstate the burden of proof.[58]

Third, Rogers argues the State shifted the burden of proof by impugning Rogers' credibility and vouching for J.O.'s credibility.  A prosecutor has wide latitude during closing argument to draw reasonable inferences from the evidence, including about the credibility of witnesses.[59]  Improper vouching occurs when a prosecutor expresses his personal beliefs about a witness's credibility or relies upon information not introduced in evidence to support a witness's credibility.[60]  J.O. and Rogers both testified, so the prosecutor was free to argue about their credibility based on the evidence.  This is especially true where credibility is a central issue in a trial, and the defendant's theory of the case calls the complaining witness's credibility into question.[61]  Because Rogers and J.O. testified and the prosecutor's arguments were reasonable inferences from the evidence presented and did not rely on the prosecutor's personal feelings, he did not shift the burden of proof or improperly vouch for J.O.'s credibility.

---

[57] Id. at 685.

[58] See State v. Pirtle, 127 Wn.2d 628, 658, 904 P.2d 245 (1995) ("abiding belief" instruction does not misstate the burden of proof).

[59] Thorgerson, 172 Wn.2d at 448.

[60] Id. at 462.

[61] See id. at 448 (credibility arguments during closing were appropriate where the defendant questioned the complaining witness's truthfulness); RP (Oct. 29, 2018) at 190 (Rogers arguing J.O. had incentives to make up sexual misconduct allegations).

Fourth, Rogers contends the prosecutor made an improper argument by referring to uncharged crimes. A prosecutor may not make statements unsupported by the record that prejudice the defendant.[62] Rogers compares this case to State v. Boehning, where the prosecutor repeatedly referenced dismissed charges of rape against the defendant and facts not introduced into evidence.[63] But the cases are entirely distinct. The prosecutor here clearly stated the six charges were based on at least five different assaults, and he identified each assault. The assaults he identified were based on J.O.'s testimony, which included her estimate that Rogers forced her to perform oral sex on him between five and ten times. The prosecutor merely made a reasonable argument based upon the evidence.

Because Rogers fails to show the prosecutor's conduct was improper, his failure to object at trial waived these issues.[64] And, contrary to Rogers' contention, defense counsel was not ineffective for declining to object.

## V. Community Custody Conditions

Rogers contends, and the State agrees, the trial court erred by requiring that his therapist make regular reports to the Department of Corrections. Because the condition does not appear to be authorized by law, the State's concession is well-taken and ministerial remand is appropriate to strike it.

---

[62] State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

[63] 127 Wn. App. 511, 519-23, 111 P.3d 899 (2005).

[64] Thorgerson, 172 Wn.2d at 443.

Therefore, we affirm Rogers' conviction and remand for proceedings consistent with this opinion.

WE CONCUR: